# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1843

_____

| | | |
|---|---|---|
| Eric Williams, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Moses Jackson, Captain, East Arkansas | * | Appeal from the United States |
| Regional Unit, ADC, individual and | * | District Court for the |
| official capacities; Jeremy Andrews, | * | Eastern District of Arkansas. |
| Major, East Arkansas Regional Unit, | * | |
| ADC, individual and official capacities; | * | |
| Marion Beard, Lt., East Arkansas | * | |
| Regional Unit, ADC, individual and | * | |
| official capacities; Billy Parsons, in | * | |
| official and individual capacities, | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: December 17, 2009
Filed: March 25, 2010

_____

Before WOLLMAN, RILEY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff Eric Williams, a former Arkansas inmate, brought Eighth Amendment claims against a prison maintenance supervisor and three correction officers alleging that they willfully and maliciously exposed him to ultraviolet radiation resulting in

physical injury. The defendants argued that Williams failed to adequately exhaust his administrative remedies and that they were entitled to qualified immunity. The district court denied qualified immunity as to all four defendants and found that Williams had adequately exhausted all of the administrative remedies practically available to him.

We hold that defendant Parsons, the maintenance supervisor, is entitled to qualified immunity. As to the other defendants, we hold that, given the prevalence of outstanding factual disputes, the district court correctly denied qualified immunity. Finally, the district court's rejection of the defendants' failure-to-exhaust affirmative defense is not an appealable final order. It is legally and conceptually separate from the issues involved in the qualified-immunity appeal. Accordingly, it is not inextricably intertwined with the qualified-immunity issue, and we will not address it at this time.

I. Background

When Williams was an Arkansas inmate, he was in a shared room containing a germicidal ultraviolet radiation lamp used for the treatment of tuberculosis. In normal operation, the lamp contained a shield to protect occupants from exposure to the ultraviolet radiation. The allegations in the present case focus on correction officers' removal of the shield and exposure of Williams to radiation.

The parties agree that correction officers Jackson, Andrews, and Beard conducted a "shake down" of the room looking for contraband. According to Williams's deposition testimony and affidavit, an inmate made comments to these officers when the officers were leaving the room. As an apparent act of retaliation, the officers then removed the protective shield from the ultraviolet lamp, and one of the officers stated, "I got something for y'all." Williams states that he and other inmates asked the officers to replace the shield or turn off the lamp due to its danger but that the officers refused. Williams also states that the shield contained a

conspicuous warning label. Further, the inmates and officers alike had previously observed maintenance personnel don protective gear before working on or handling the lights. Williams argues that, based on these allegations, it is necessary at this preliminary stage of the proceedings to infer that officials knew of health risks from the unshielded ultraviolet radiation lamp and that they purposefully exposed him to the ultraviolet light as a malicious and retaliatory act.

A guard who was not involved in the "shake down" and who is not named as a defendant in this case arrived for work the next day. He saw the unshielded lamp and ordered that it be turned off. At the time it was turned off, the unshielded lamp had been exposing Williams to radiation for at least fourteen hours.

Williams was sleeping when the guard arrived. The guard woke Williams and took him and other inmates to the infirmary. The inmates reported red skin, burning eyes, swollen eyes, blurred vision, and headaches. Medical reports show that Williams exhibited facial swelling during this initial infirmary visit. Williams received eyedrops and patches for both eyes. He wore the patches for two days. He began having migraine headaches shortly thereafter and received painkillers for the headaches.

In a return visit to the prison infirmary, Williams exhibited redness in his eyes. He claims that his headaches continue through the present time and that he suffers sporadically blurred vision as well as an increased risk of cancer. He has not sought medical help for these alleged symptoms since his release from prison. He attributes this fact to a lack of money and insurance. Williams asserts that an expert will testify to offer an opinion that his symptoms are of a type that can be caused by ultraviolet radiation. The expert is not a medical doctor, but rather, an ultraviolet lighting specialist.

Shortly after these events, Williams filed an administrative complaint through the prison's grievance system. The administrative complaint named the three correction-officer defendants: Jackson, Andrews, and Beard. Williams received no relief through the administrative grievance system, and he subsequently filed the present action against Jackson, Andrews, and Beard in the district court. After Williams was released from prison, he learned that Parsons purportedly received notice of the unshielded lamp but failed to take timely action to replace the shield. Williams added Parsons as a defendant in an amended complaint.

The defendants moved for summary judgment asserting qualified immunity and failure to exhaust administrative remedies. The correction-officer defendants asserted that they removed the shield because prisoners had damaged it, the officers had no knowledge of possible harm from ultraviolet radiation, and the prisoners did not demand that the defendants replace the shield. The officers also asserted a general argument that, as a matter of law, reasonable officers would not have known that the lamp could be harmful. Parsons asserted that Williams's allegations against him suggested, at the most, garden variety negligence in that Williams described merely Parson's failure to act in a timely manner to repair or replace the shield.

II.    Discussion

A.    Jurisdiction

The parties devote considerable argument to the question of whether Williams adequately exhausted his administrative remedies through the prison grievance system. It is well established that, in the absence of outstanding questions of material fact, we have jurisdiction over interlocutory appeals regarding denials of qualified immunity. White v. McKinley, 519 F.3d 806, 812–13 (8th Cir. 2008). That jurisdiction, however, is limited and does not extend to other issues unless those issues are free of material factual disputes and inextricably intertwined with the legal issues

-4-

involved in the qualified immunity analysis.  <u>Id.</u> at 815.  Issues are not inextricably intertwined if different legal analyses or standards apply to resolution of the issues. <u>Id.</u>; <u>see also</u> <u>Kincade v. City of Blue Springs</u>, 64 F.3d 389, 395 (8th Cir. 1995) ("Both issues require application of the same constitutional test, and therefore, the question concerning . . . constitutional protection is coterminous with, or subsumed in the qualified immunity issue.") (internal quotation marks omitted).  Here, the failure-to-exhaust affirmative defense involves an entirely separate and distinct legal standard and analysis than the qualified immunity issue.  Accordingly, it is not inextricably intertwined with the qualified immunity issue, and we may not address it at this time. Further, we note as an aside that all of the defendants' arguments on this point appear to rely on disputed facts, providing a separate basis for refusing to review this issue on an interlocutory basis.

B.     Qualified Immunity

Qualified immunity generally shields "[g]overnment officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  To resolve a government official's claim of qualified immunity, we apply a two-part test, asking whether the plaintiff has demonstrated a violation of a constitutional right and whether that constitutional right was clearly established at the time of the violation.  <u>Id.</u>  We may address these questions in either order.  <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 818 (2009).

i.     Correction-Officer Defendants

Williams alleges excessive force and deliberate indifference, both in violation of the Eighth Amendment, based on the correction-officer defendants' purportedly retributory and malicious behavior in purposefully removing the shield, exposing him

to radiation, and ignoring demands to replace the shield or deactivate the light. We first address the excessive force claim.

It is "well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause." Foulk v. Charrier, 262 F.3d 687, 702 (8th Cir. 2001). The Supreme Court recently clarified that the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied, is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim. See Wilkins v. Gaddy, 130 S. Ct. 1175 (2010) (per curiam). In doing so, the Court expressly rejected the theory that lower courts may dismiss such claims based solely on the *de minimis* nature of the resulting injury. Id. at *1–2. The Court, however, left open the possibility of dismissal where the injury conclusively shows that the force applied was not unconstitutional. Id. at *4.

The Court's analysis rested on the well-established rule that, "[t]he 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. at *2 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). In other words, because "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action," a *de minimis* application of force will not give result in a constitutional violation. Hudson, 503 U.S. at 9; see also Wilkins, 2010 WL 596513 at *2 ("An inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim.") (internal quotation marks omitted). Where the force applied is excessive, however, a constitutional claim may survive summary dismissal even if the resulting injury is *de minimis*. Wilkins, 2010 WL 59651713 at *4.

Here, the correction-officer defendants present two arguments, one factual and one legal, in attempting to show that there was no violation of a clearly established constitutional right. Neither argument provides a basis for relief at this stage of the proceedings.

Regarding the factual argument, the officers rely on their own version of the facts to assert that they took no malicious or retaliatory action towards Williams. Such an argument may be presented at trial, but in our review, we must interpret the record in the light most favorable to Williams. Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009). Accordingly, for the purpose of this appeal, we interpret the record as showing that the officers acted in response to derisive inmate comments, removed the shield as a retaliatory act, ignored inmate complaints and requests to deactivate the light, and made a comment to inmates in the room demonstrating a malicious and retaliatory intent. We make no judgment as to the strength of the officers' contrary factual assertions. We note only that the officers' assertions are largely irreconcilable with Williams's affidavit and deposition testimony. As such, we need not address further any arguments that rely upon the officers' disputed assertions.

The officers' legal argument merits more consideration. The officers argue that reasonable correction officers in their position would not have known that disinfecting ultraviolet radiation could be harmful and that, in the absence of authority holding that inmates have a clearly established right to be free from such radiation, qualified immunity applies. In this regard, the officers assert that Williams will need an expert to prove causation and that if experts can debate the level of hazard posed by the radiation, a right to be free from such radiation could not have been clearly established.

We believe this argument overstates the degree of specificity required in existing law for a constitutional right to be clearly established. It also ignores the

-7-

importance of reasonable factual inferences that we must draw against the officers. In presenting qualified immunity arguments, plaintiffs and defendants often spar over the appropriate level of specificity to apply in assessing whether there has been a violation of a clearly established constitutional right. In the present case, Williams argues that the officer defendants are attempting to make his "rights seem trivial and obscure by framing them very narrowly." He concludes that it is not surprising that he and the district court cited no cases dealing with disinfecting ultraviolet radiation because, "[c]ase law is unable to keep up with the countless tools and methods by which a state official might physically harm a prisoner."

"Qualified immunity analysis 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Smook v. Minnehaha County, 457 F.3d 806, 813 (8th Cir. 2006) (quoting Saucier v. Katz, 533 U.S. 194, 201(2001)). That having been said, officers cannot escape suit merely because no prior case involved exactly the same facts as alleged by the plaintiff. Rather, "the contours of an alleged constitutional right must be 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In other words, the rights as set forth in the holdings of existing cases are clearly established not only as to the facts of the prior cases, but also as applied in contexts that reasonable officers would understand to fall within the scope of those rights.

We have often stated that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Littrell v. Franklin, 388 F.3d 578, 582 (8th Cir. 2004) (quotation omitted). We have never held, however, that bright lines only exist where facts as alleged are identical to what a court has previously addressed. Rather, "[t]he Supreme Court has clearly stated that in establishing qualified immunity, the test must be applied at a level of specificity that approximates the actual circumstances of the case." Engleman v. Murray, 546 F.3d 944, 949 n.4 (8th Cir. 2008).

Here, for purposes of our review, the allegations in the case involve the malicious and retaliatory exposure of inmates to an apparently intended harm without a penological purpose. In our view, these are the allegations that matter when "approximat[ing] the actual circumstances of the case," and we emphasize the allegations of purposefulness and retaliation. Id. We do not believe that qualified immunity in this context hinges on the question of whether prior cases referenced the particular, technological manner in which force was applied. Similarly, we do not believe qualified immunity applies simply because the precise degree of harm likely to result was uncertain. As already discussed, the material inquiry is not the degree of harm, but rather, the degree of force applied and the reason for applying that force. The constitution clearly protects against the "sadistic use of force by a prison official," Foulk, 262 F.3d at 702. As such, reasonable officers are on sufficient notice that they may not purposefully expose prisoners to potentially harmful radiation in the complete absence of a penological purpose.

Importantly, the record here taken in a light most favorable to Williams shows just such a complete absence of a penological purpose in removing the shield and in failing to deactivate the light immediately upon removal of the shield. Given the reasonable inference that the officers acted maliciously in an effort to cause harm, and the allegations that an injury did result, the correction-officer defendants are not entitled to qualified immunity at this time. Similarly, in this case, the same rationale supports the denial of qualified immunity as to the related claim of deliberate indifference.

ii.     Maintenance-Supervisor Parsons

Regarding maintenance-supervisor Parsons, we find that Williams has failed to allege a constitutional violation; Williams alleges nothing more than simple negligence. The claim against Parsons is in the nature of a deliberate-indifference claim, and such a claim requires more than a showing of simple or even gross

-9-

negligence.  See Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009) ("Even if an official acts unreasonably in failing to take particular measures to improve conditions at a jail facility, for example, 'reasonableness is a negligence standard,' and 'negligence cannot give rise' to a deliberate indifference claim." (quoting Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005)).  Accordingly, even if we were to assume that an inmate or former inmate could present a viable deliberate indifference claim against a maintenance supervisor, Williams has not alleged facts that might support such a claim in this case.

III.    Conclusion

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

_____