# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-4505

_____

Elizabeth Fryberger

*Plaintiff - Appellee*

USA

*Intervenor*

v.

University of Arkansas; Board of Trustees of the University of Arkansas

*Defendants - Appellants*

------------------------------

State of Arizona

*Amicus on Behalf of Appellant(s)*

Equal Rights Advocates

*Amicus on Behalf of Appellee(s)*

State of Arkansas; State of Kansas; State of Louisiana; State of Nebraska; State of South Carolina; State of Texas

*Amici on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: February 13, 2018
Filed: May 2, 2018

_____

Before LOKEN, BENTON, and ERICKSON, Circuit Judges.

_____

BENTON, Circuit Judge.

Elizabeth Fryberger sued the University of Arkansas and its Board of Trustees. The district court[1] partly denied the University's motion to dismiss. It appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Fryberger sued the University over its response to her report of a sexual assault on campus. She sought compensatory and punitive damages for violations of Title IX of the Education Amendments of 1972. Title IX says (with exceptions): "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." **20 U.S.C. § 1681(a)**.

The University moved to dismiss on the basis of sovereign immunity. The district court refused to dismiss the Title IX claims, citing the "Civil rights remedies equalization" amendment of 1986 (the Remedies Equalization amendment), 42 U.S.C. § 2000d-7, and *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 76 (1992).

_____

[1]The Honorable P.K Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas.

"[D]enials of motions to dismiss on Eleventh Amendment immunity grounds are immediately appealable." *United States ex rel. Rodgers v. Arkansas*, 154 F.3d 865, 867 (8th Cir. 1998), *citing* *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993) ("States and state entities that claim to be 'arms of the State' may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity."). This court reviews de novo questions of sovereign immunity. *Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014).

Under the Eleventh Amendment and constitutional principles of sovereign immunity, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990), *quoting* *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "A State, however, may choose to waive its immunity in federal court at its pleasure." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011).

"Congress may require a waiver of state sovereign immunity as a condition for receiving federal funds." *Jim C. v. United States*, 235 F.3d 1079, 1081 (8th Cir. 2000) (en banc), *citing* *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999). However, because "[s]overeign immunity principles enforce an important constitutional limitation on the power of the federal courts," "[a] State's consent to suit must be 'unequivocally expressed' in the text of the relevant statute." *Sossamon*, 563 U.S. at 285, *quoting* *Pennhurst*, 465 U.S. at 99. "Only by requiring this 'clear declaration' by the State can we be 'certain that the State in fact consents to suit.'" *Id.* at 284, *quoting* *College Sav.*, 527 U.S. at 680.

Fryberger argues that under the Remedies Equalization amendment, the University consented to this suit by accepting federal funds. The University acknowledges it accepted federal funds. It also does not challenge—and this court

-3-

does not address—Congress's authority to enact Title IX or the Remedies Equalization amendment under the Spending Clause. *See Sossamon*, 563 U.S. at 282 n.1 (declining to address Congress's authority to enact RLUIPA under the Spending Clause). The question is whether the University's consent is unequivocally expressed in the Remedies Equalization amendment, section 2000d-7(a) (emphasis added):

> (1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . , *title IX of the Education Amendments of 1972* . . . , the Age Discrimination Act of 1975 . . . , title VI of the Civil Rights Act of 1964 . . . , or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

> (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such violation in the suit against any public or private entity other than a State.

The Remedies Equalization amendment unequivocally expresses the University's consent to suit in federal court for violations of Title IX. *See Sossamon*, 563 U.S. at 291 ("[Section 2000d-7(a)(1)] expressly waives state sovereign immunity for violations of . . . title IX . . . ."); *Lane v. Pena*, 518 U.S. 187, 200 (1996) (referring to § 2000d-7 as "an unambiguous waiver of the States' Eleventh Amendment immunity"). *Cf. Crawford v. Davis*, 109 F.3d 1281, 1283 (8th Cir. 1997) ("Congress has unequivocally expressed its intent to abrogate the states' Eleventh Amendment immunity for Title IX claims, *see* 42 U.S.C. § 2000d-7(a)(1) . . . ."), *citing Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995)).

The University contends, however, that this consent does not extend to the only relief sought by Fryberger, *damages* in a Title IX suit. The University relies on

-4-

*Sossamon*. There, the Supreme Court reaffirmed that "a waiver of sovereign immunity 'will be strictly construed, in terms of its scope, in favor of the sovereign.'" ***Sossamon***, 563 U.S. at 285, *quoting **Lane***, 518 U.S. at 192. Accordingly, "a waiver of sovereign immunity to other types of relief does not waive immunity to damages." ***Id.*** (alteration in original), *quoting **Lane***, 518 U.S. at 192. "The question . . . is . . . whether Congress has given clear direction that it intends to include a damages remedy. The text must 'establish unambiguously that the waiver extends to monetary claims.'" ***Id.*** at 289, *quoting **United States v. Nordic Village***, 503 U.S. 30, 34 (1992).

The Court in *Sossamon* addressed the waiver provision in the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). ***Id.*** at 280. That waiver says, "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." ***Id.*** at 282 (alteration in original), *quoting* **42 U.S.C. § 2000cc-2(a)**. The Court held that "appropriate relief" does not unambiguously include damages. ***Id.*** at 285. Strictly construing the waiver in favor of the sovereign, the Court said, "'Appropriate relief' does not so clearly and unambiguously waive sovereign immunity to private suits for damages that we can 'be certain that the State in fact consents' to such a suit." ***Id.*** at 285-86, *quoting **College Sav.***, 527 U.S. at 680.

In contrast, the Remedies Equalization amendment says that in suits against a state, "remedies (*including remedies* both *at law* and in equity) are available for [violations of Title IX] to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a state." **§ 2000d-7(a)(2)** (emphasis added). This resolves any possible ambiguity in section 2000d-7(a)(1). Remedies at law include damages. *See **SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC***, 137 S.Ct. 954, 960 (2017) ("damages" are "a quintessential legal remedy"); ***Mertens v. Hewitt Assoc.***, 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of *legal* relief." (emphasis in original)); ***Bowen v. Massachusetts***, 487 U.S. 879, 893 (1988) (discussing the

"distinction between an action at law for damages . . . and an equitable action for specific relief"); ***Ventura v. Kyle***, 825 F.3d 876, 887 (8th Cir. 2016) ("damages" are a "remedy at law"). Compensatory damages are available in Title IX suits against any public or private entity other than a state. ***Franklin***, 503 U.S. at 76 (the Title IX implied right of action, recognized in *Cannon v. University of Chicago*, 441 U.S. 677, 717 (1979), extends to suits for compensatory damages). *See* ***Barnes v. Gorman***, 536 U.S. 181, 187 (2002) ("[U]nder Title IX . . . a recipient of federal funds is . . . subject to suit for compensatory damages"), *citing* ***Franklin***, 503 U.S. at 76. Thus, the only "plausible interpretation" is that compensatory damages—remedies at law available against non-states—are available against states to the same extent. *Cf.* ***Sossamon***, 563 U.S. at 287 ("[W]here a statute is susceptible of multiple plausible interpretations, including one preserving immunity, we will not consider a State to have waived its sovereign immunity.").

The University argues that Congress did not intend the waiver to include Title IX suits for damages, because it was unclear in 1986 (when Congress enacted the Remedies Equalization amendment) whether there was a cause of action for damages. In 1986, the Supreme Court had decided *Cannon*, which held there is a private Title IX cause of action, but not *Franklin*, which held that the cause of action extends to suits for compensatory damages.

But this context supports finding a waiver here. First, it shows that Congress intended to create an unambiguous waiver of state sovereign immunity including suits for damages. The Court explained:

> [Section 2000d-7] was enacted in response to our decision in *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 [] (1985), where we held that Congress had not unmistakably expressed its intent to abrogate the States' Eleventh Amendment immunity in the Rehabilitation Act, and that the States accordingly were not subject to suit in federal court by litigants seeking retroactive monetary relief under § 504. . . . By

enacting [section 2000d-7], Congress sought to provide the sort of unequivocal waiver that our precedents demand.

*Lane*, 518 U.S. at 198 (internal quotation marks and citation omitted). Second, it shows Congress intended the waiver to apply in Title IX suits. Congress "was legislating with full cognizance of" *Cannon*. *See Franklin*, 503 U.S. at 72 ("[Section 2000d-7] cannot be read except as a validation of *Cannon*'s holding."); *Cf. id.* at 78 (Scalia, J., concurring) ("42 U.S.C. § 2000d-7(a)(2), must be read, in my view, not only 'as a validation of *Cannon*'s holding,' . . but also as an implicit acknowledgment that damages are available [in Title IX suits]."). Thus, Congress "specifically considered state sovereign immunity," including immunity to Title IX suits for damages, and "intentionally legislated on the matter," conditioning funds on a waiver of that immunity. *See Sossamon*, 563 U.S. at 290, *citing Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 139 (2005) ("[C]lear statement rules ensure Congress does not, by broad or general language, legislate on a sensitive topic inadvertently or without due deliberation.").

The University also argues the text of section 2000d-7(a) is ambiguous, because rather than ending with the concept that "damages are available against a state," it continues with "damages are available against a state *to the same extent as a non-state*." True, a state must look outside the text to *Franklin* in order to determine that compensatory damages are available against non-states. The University concludes the waiver is not "'unequivocally expressed' *in the text of the relevant statute*." *See id.*, at 285 (emphasis added). *See also Dellmuth v. Muth*, 491 U.S. 223, 230 (1989) ("[E]vidence of congressional intent must be both unequivocal and *textual*." (emphasis added)).

The text is not ambiguous. As discussed, it "establish[es] unambiguously that the waiver extends to" the *Cannon-Franklin* cause of action for damages. *See Sossamon*, 563 U.S. at 289. This satisfies the clear statement rule. *Cf. Sossamon*,

563 U.S. at 289 n.6 ("Liability against nonsovereigns could not put the states on notice that they would be liable in the same manner, absent an unequivocal textual waiver."). The text of the waiver need not also expressly restate the *Cannon-Franklin* cause of action. *Cf.* **FDIC v. Meyer**, 510 U.S. 471, 484 (1994) (explaining that "whether there has been a waiver" of the federal government's sovereign immunity and whether there is a "cause of action for damages" are "analytically distinct inquiries" (internal quotation marks omitted)). If the University were correct, the Remedies Equalization amendment would be *entirely ineffective*, because it similarly relies on the substantive law of each listed statute without expressly stating a cause of action for any kind of relief. The University rightly does not argue this. *See, e.g.*, **Dinkins v. Correctional Med. Servs.**, 743 F.3d 633, 635 (8th Cir. 2014) (per curiam) ("As to the request for damages, the [state agency] waives sovereign immunity under [section 504 of the Rehabilitation Act] by accepting federal funds."), *citing* **§ 2000d-7(a)**.

The University and its amici emphasize the Court's holding in *Lane* that section 2000d-7(a) "is not so free from ambiguity that we can comfortably conclude, based thereon, that Congress intended to subject the Federal Government to awards of monetary damages for violations of § 504(a) of the [Rehabilitation] Act." 518 U.S. at 200. However, the lack of clarity in *Lane*—whether section 2000d-7(a)(2)'s phrase "public or private entity" included the *federal government*—does not create ambiguity here, where state immunity is at issue. Section 2000d-7(a) speaks clearly to state immunity. *See id.* at 200 ("Given the care with which Congress responded to our decision in *Atascadero* by crafting an unambiguous waiver of the States' Eleventh Amendment immunity in [42 U.S.C. § 2000d-7(a)(1)], it would be ironic indeed to conclude that the same provision 'unequivocally' establishes a waiver of the Federal Government's sovereign immunity against monetary damages awards . . . .").

The Remedies Equalization amendment clearly and unambiguously expresses the University's consent to Title IX suits for damages. By accepting federal funds, the University in fact consented to suits for compensatory damages for violations of Title IX. *See* ***Cherry v. University of Wisconsin Sys. Bd. of Regents***, 265 F.3d 541, 555 (7th Cir. 2001) (under 2000d-7(a), state waives sovereign immunity to Title IX suit for compensatory damages by accepting federal funds), *citing* ***Pederson v. LSU***, 213 F.3d 858, 876 (5th Cir. 2000) *and* ***Litman v. George Mason Univ.***, 186 F.3d 544, 555 (4th Cir. 1999). *Cf.* ***Dinkins***, 743 F.3d at 635 (under 2000d-7(a), state waives sovereign immunity to suits seeking damages for violations of section 504 of the Rehabilitation Act).

The district court did not err in refusing to dismiss Fryberger's Title IX claims. Because the University waived its immunity, this court need not consider whether Congress, under section 5 of the Fourteenth Amendment, abrogated it.

This court also need not consider whether *punitive* damages are available. The district court did not rule on this. Neither party raised it on appeal. This court's holding on compensatory damages resolves whether the University is immune *from suit*. *See* ***Puerto Rico Aqueduct***, 506 U.S. at 141, 144-45 ("district court order denying a claim . . . to Eleventh Amendment immunity from suit" is "effectively unreviewable on appeal," and thus appealable under the collateral order doctrine, because "the value to the States of their Eleventh Amendment immunity . . . is . . . lost as litigation proceeds past motion practice"). *See also* ***Espinal-Dominguez v. Commonwealth of Puerto Rico***, 352 F.3d 490, 499 (1st Cir. 2003) (no collateral order jurisdiction where "a State asserts only that a singular remedy, compensatory damages, is precluded by the Eleventh Amendment, yet acknowledges that it is subject to the plaintiff's federal court suit"); ***Cherry v. University of Wisconsin Sys. Bd. of Regents***, 265 F.3d 541, 547 (7th Cir. 2001) (declining to address claim that state agency is immune from a punitive damages award on interlocutory appeal because "[a] claim of immunity to a certain class of damages" is different than a claim

to immunity from suit); ***Burns-Vidlak ex rel. Burns v. Chandler***, 165 F.3d 1257, 1260 (9th Cir. 1999) (no collateral order jurisdiction over claim of immunity to punitive damages where the state "concedes that it is subject to suit").

*******

The judgment is affirmed.

_____