# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-2939

_____

Sam Wolk

*Plaintiff - Appellee*

v.

City of Brooklyn Center; Tim Gannon, Brooklyn Center Police Chief, in his individual capacity; Tony Gruenig, Brooklyn Center Police Commander, in his individual capacity

*Defendant*s

David Hutchinson, Hennepin County Sheriff, in his individual capacity; Hennepin County

*Defendants - Appellants*

Minnesota Department of Natural Resources; Rodman Smith, Minnesota Department of Natural Resources Director of Enforcement Colonel, in his individual capacity; Aaron Kahre; John Does, 1-100, in their individual capacities

*Defendant*s

_____

No. 23-2940

_____

Sam Wolk

*Plaintiff - Appellee*

v.

City of Brooklyn Center; Tony Gruenig, Brooklyn Center Police Commander, in his individual capacity

*Defendants - Appellants*

Tim Gannon, Brooklyn Center Police Chief, in his individual capacity; David Hutchinson, Hennepin County Sheriff, in his individual capacity; Hennepin County; Minnesota Department of Natural Resources; Rodman Smith, Minnesota Department of Natural Resources Director of Enforcement Colonel, in his individual capacity; Aaron Kahre; John Does, 1-100, in their individual capacities

*Defendant*s

———————————————

No. 23-2943

———————————————

Sam Wolk

*Plaintiff - Appellee*

v.

City of Brooklyn Center; Tim Gannon, Brooklyn Center Police Chief, in his individual capacity; Tony Gruenig, Brooklyn Center Police Commander, in his individual capacity; Hennepin County; David Hutchinson, Hennepin County Sheriff, in his individual capacity

*Defendant*s

Minnesota Department of Natural Resources; Aaron Kahre, Minnesota Department of Natural Resources Incident Commander Captain, in his individual capacity; Rodman Smith, Minnesota Department of Natural Resources Director of Enforcement Colonel, in his individual capacity

*Defendants - Appellants*

John Does, 1-100, in their individual capacities

*Defendants*

-2-

_____

No. 23-2944
_____

Sam Wolk

*Plaintiff - Appellee*

v.

City of Brooklyn Center

*Defendant*

Tim Gannon, Brooklyn Center Police Chief, in his individual capacity

*Defendant - Appellant*

Tony Gruenig, Brooklyn Center Police Commander, in his individual capacity;
David Hutchinson, Hennepin County Sheriff, in his individual capacity; Hennepin
County; Minnesota Department of Natural Resources; Rodman Smith, Minnesota
Department of Natural Resources Director of Enforcement Colonel, in his
individual capacity; Aaron Kahre; John Does, 1-100, in their individual capacities

*Defendant*s
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 12, 2024
Filed: July 12, 2024
_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.
_____

ERICKSON, Circuit Judge.

-3-

This case arises out of protests that occurred in Brooklyn Center, Minnesota following the fatal police shooting of Daunte Wright during a traffic stop. Sam Wolk brought this action under 42 U.S.C. § 1983, alleging claims for First and Fourth Amendment violations and civil conspiracy against a variety of law enforcement agencies and officials for injuries sustained while protesting. The district court denied the defendants' motions to dismiss. We affirm in part and reverse in part.

## I.    BACKGROUND

In the days following the April 11 shooting of Wright, protests and demonstrations occurred in Brooklyn Center, Minnesota. The amended complaint alleges that Brooklyn Center Police Department ("BCPD") Police Chief Tim Gannon, BCPD Commander Tony Gruenig, and Hennepin County Sheriff David Hutchinson were in charge of law enforcement's tactical operations during the protests and made decisions regarding use of force against protesters. Colonel Rodman Smith and Captain Aaron Kahre of the Department of Natural Resources ("DNR") coordinated DNR's response to the protests, with Kahre serving as the DNR incident commander on the scene.

According to Wolk, each of these agencies and individuals coordinated with one another and authorized or acquiesced in the violations of Wolk's rights. More specifically, in response to law enforcement's handling of protests on April 11, the Brooklyn Center City Council passed a resolution limiting law enforcement's use of certain crowd control tactics, including tear gas and rubber bullets. It also recommended that BCPD Police Chief Gannon resign, which Gannon did on April 13, 2021. Gruenig was named interim police chief. Wolk alleges that despite the City Council's resolution, officers from the BCPD, Hennepin County, and DNR continued to use tear gas, flashbang grenades, pepper spray, and rubber bullets against protesters and the DNR employed additional tactics, including throwing some protesters to the ground for arrest.

Wolk, while at protests on April 13 and 14, 2021, was subjected to tear gas, flashbang grenades, and other crowd-control munitions as he protested outside the Brooklyn Center police station located on North Humboldt Avenue. While Wolk was protesting on April 14 at the police station, unknown officers behind a chain link fence around the police station began pepper spraying protesters and ordering them to back up. Wolk claims the officers failed to allow time for protesters to comply with their orders prior to deploying pepper spray. Wolk was shot in the knee with a rubber bullet by an unknown officer who fired through the fence less than 10 feet away while Wolk attempted to move away. Wolk alleges chronic knee pain and has been referred to a chronic pain specialist for long-term care.

Wolk commenced this action, alleging claims for Fourth Amendment excessive force, Fourth Amendment failure to intervene, First Amendment retaliation, Fourteenth Amendment due process violations, and civil conspiracy against Gannon, Gruenig, Hutchinson, Smith, Kahre, BCPD, and Hennepin County. Wolk also alleged claims for Fourth Amendment excessive force, First Amendment retaliation, and Fourteenth Amendment due process violations against the DNR. The defendants moved for dismissal, which the district court granted with respect to the due process claim, denying all other claims. This appeal followed.

## II. DISCUSSION

### a. Sovereign Immunity – DNR

We have jurisdiction over interlocutory appeals involving Eleventh Amendment immunity, Johnson v. Griffin, 69 F.4th 506, 510 (8th Cir. 2023), which we review *de novo*, Fryberger v. Univ. of Ark., 889 F.3d 471, 473 (8th Cir. 2018). The district court denied DNR's motion to dismiss but failed to address its Eleventh Amendment arguments. We exercise our discretion to decide the issue *sua sponte* and reverse. McCrary v. Stifel, Nicolaus & Co., Inc., 687 F.3d 1052, 1058 (8th Cir. 2012).

The Eleventh Amendment bars suits by plaintiffs against state agencies when the state has not consented to suit. Holloway v. Conger, 896 F.2d 1131, 1136 (8th Cir. 1990). The doctrine of *Ex parte Young* provides a narrow exception to Eleventh Amendment immunity allowing suits for prospective injunctive relief against state officials sued in their official capacities, but not suits for prospective injunctive relief against state agencies. Monroe v. Ark. State Univ., 495 F.3d 591, 594 (8th Cir. 2007) (discussing Ex parte Young, 209 U.S. 123 (1908)).

The DNR, a state agency, has not consented to suit. *Ex parte Young* does not apply because Wolk sued DNR officials Kahre and Smith in their individual capacities alone. Wolk's claims against the DNR are barred by the Eleventh Amendment, and we reverse the district court's denial of DNR's motion to dismiss.

## b. Qualified Immunity – Supervisory Defendants

We have jurisdiction over interlocutory appeals involving qualified immunity and review the denial of a motion to dismiss on this basis *de novo*. Scott v. Tempelmeyer, 867 F.3d 1067, 1070 (8th Cir. 2017).

The district court found that Wolk sufficiently alleged claims under § 1983 for excessive force, for failure to intervene, retaliation, and conspiracy to violate constitutional rights against defendants Gannon, Gruenig, Hutchinson, Kahre, and Smith ("Supervisory Defendants") under a theory of supervisory liability. The Supervisory Defendants contend on appeal that Wolk's claims are barred by qualified immunity, citing the lack of a clearly established constitutional violation. See Baude v. Leyshock, 23 F.4th 1065, 1071 (8th Cir. 2022).

### i. Supervisory Liability - Gannon

Wolk has failed to state a claim of supervisory liability against Gannon. Having resigned before Wolk was injured, Gannon could not have directly caused Wolk's injuries or have supervised the conduct giving rise to Wolk's injuries. See

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (finding that a plaintiff establishes supervisory liability under 42 U.S.C. § 1983 by showing the supervisor's direct participation in the constitutional violation, or the supervisor's failure to supervise or train the actor who caused the deprivation). We reverse the district court's denial of Gannon's motion to dismiss.

### ii. Fourth Amendment Claims

Wolk's Fourth Amendment excessive force and failure to intervene claims against the Supervisory Defendants are also insufficient as a matter of law. Both claims require that law enforcement effectuate an illegal seizure. Williams v. City of Burlington, 27 F.4th 1346, 1351 (8th Cir. 2022); see Robinson v. Payton, 791 F.3d 824, 829 (8th Cir. 2015). Wolk alleged that the Supervisory Defendants directed law enforcement's response to the protests and authorized the indiscriminate use of tear gas, flashbang grenades, pepper spray, and rubber bullets to disperse the crowds, which ultimately resulted in Wolk's injuries. However, this Court concluded last year—more than two years after the incident giving rise to the claims in this case—that it was not clearly established that the use of force with the intent to disperse or repel a crowd constituted a seizure under the Fourth Amendment. See Dundon v. Kirchmeier, 85 F.4th 1250, 1256-57 (8th Cir. 2023) (distinguishing force used by officers with intent to apprehend with force used by officers with intent to disperse or repel). Wolk has not shown it was clearly established as of April 2021 that officers effect a seizure when they use force to disperse protestors. And while Wolk's complaint generally alleges that some protesters were thrown to the ground for arrest, which tends to show an intent to apprehend rather than disperse, Wolk does not allege that these actions caused Wolk's injuries. The Supervisory Defendants are entitled to qualified immunity on Wolk's Fourth Amendment excessive force and failure to intervene claims, and we reverse the district court's denial of their motion to dismiss on this basis.

### iii. First Amendment Claims

Wolk's First Amendment retaliation claims against the Supervisory Defendants require a "distinct" analysis from Wolk's Fourth Amendment claims, Aldridge v. City of St. Louis, 75 F.4th 895, 900 n.4 (8th Cir. 2023), because "retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." Cody v. Weber, 256 F.3d 764, 771 (8th Cir. 2001). The three elements of a First Amendment retaliation claim are: (1) the plaintiff engaged in protected activity, (2) the government took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. Green v. City of St. Louis, 52 F.4th 734, 739 (8th Cir. 2022).

This Court has expressly found that protesting a police department is protected First Amendment expression and that the deployment of tear gas or rubber bullets towards individuals is an adverse action. Id. With respect to the third element, the plaintiff must show that law enforcement's response was driven by animus, as opposed to officers' understanding of their official duties, however mistaken. Mitchell v. Kirchmeier, 28 F.4th 888, 896 (8th Cir. 2022). This determination is generally a fact question. De Mian v. City of St. Louis, 86 F.4th 1179, 1182 (8th Cir. 2023).

Wolk alleged that prior to curfew and without warning, law enforcement ordered Wolk and other protesters outside Brooklyn Center Police headquarters to back up, and then pepper sprayed them through the chain link fence before Wolk had the chance to comply. Wolk also alleged that an officer shot Wolk in the knee with a rubber bullet through the chain link fence while Wolk was attempting to move away. More facts are necessary to determine whether law enforcement singled Wolk out due to retaliatory animus or was simply acting according to an understanding of its responsibilities. Compare Green, 52 F.4th at 740 (finding that plaintiff's allegation that she was not committing a crime when law enforcement tear gassed her during a protest was sufficient to survive motion to dismiss on her claim of

-8-

retaliation for First Amendment activity) with Mitchell, 28 F.4th at 896-97 (dismissing claim for First Amendment retaliation when officers shot plaintiff with bean bags and arrested him after he stood in their way and ignored a countdown warning).  We affirm the district court's denial of qualified immunity on Wolk's First Amendment retaliation claims against all Supervisory Defendants except Gannon.  See Baude, 23 F.4th at 1071 (explaining that appellate courts do not have jurisdiction to resolve factual disputes in appeals involving qualified immunity).

### iv. Civil Conspiracy

There can be no civil conspiracy without an underlying constitutional violation.  Riddle v. Riepe, 866 F.3d 943, 949 (8th Cir. 2017).  Wolk's failure to state a Fourth Amendment claim precludes Wolk's related civil conspiracy claim.

With regard to Wolk's civil conspiracy claim pertaining to First Amendment retaliation, the amended complaint's conclusory allegation that defendants coordinated with one another regarding their response to the protests is insufficient to plausibly show the officers reached an agreement.  See Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010) (stating that a conspiracy claim requires allegations of specific facts showing a "meeting of the minds" among the alleged conspirators); see also Mendoza v. U.S. Immigration & Customs Enf't, 849 F.3d 408, 422 (8th Cir. 2017) (finding that mere cooperation between entities is not enough to establish a meeting of the minds).  Likewise, Wolk's conclusory allegations that many of the Supervisory Defendants controlled operations during the relevant time periods and/or authorized constitutional violations lack detail and specificity to show a meeting of the minds.  We reverse the district court's denial of the Supervisory Defendants' motion to dismiss Wolk's conspiracy claims.

### c. Monell Liability – Municipal Defendants

While the district court denied BCPD and Hennepin County's (the "Municipal Defendants") motions to dismiss, it failed to address the merits of Wolk's Monell

claims against the Municipal Defendants. The district court's omission does not deprive us of jurisdiction over <u>Monell</u> claims that are inextricably intertwined with the defense of qualified immunity. <u>See</u> <u>Williams v. Jackson</u>, 600 F.3d 1007, 1011 (8th Cir. 2010). Here, we found no individual liability on the Fourth Amendment-related claims or the First Amendment conspiracy claim, which is required for municipal liability to attach, so the claims are inextricably linked. <u>See</u> <u>Muir v. Decatur Cnty.</u>, 917 F.3d 1050, 1053 (8th Cir. 2019) (stating a claim is inextricably intertwined with a qualified immunity claim if resolution of the latter necessarily resolves the former); <u>see</u> <u>also Johnson v. City of Ferguson</u>, 926 F.3d 504, 506 (8th Cir. 2019) (en banc). We reverse the district court's denial of Municipal Defendants' motion to dismiss the municipal liability claims for Fourth Amendment excessive force, Fourth Amendment failure to intervene, and conspiracy to violate First and Fourth Amendment rights.

In contrast, "uphold[ing] the district court's denial of qualified immunity for the [o]fficers" on the First Amendment retaliation claim "does not resolve" whether the Municipal Defendants are entitled to dismissal of that claim for municipal liability. <u>Manning v. Cotton</u>, 862 F.3d 663, 671 (8th Cir. 2017). We lack subject matter jurisdiction over Hennepin County and BCPD's appeal of the denial of their motion to dismiss regarding the First Amendment retaliation claim. <u>Watson v. Boyd</u>, 2 F.4th 1106, 1114 (8th Cir. 2021).

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of qualified immunity to Supervisory Defendants Gruenig, Hutchinson, Kahre, and Smith on Wolk's First Amendment retaliation claim, and find we have no jurisdiction over the district court's denial of Municipal Defendants' BCPD and Hennepin County's motion to dismiss the First Amendment retaliation claim. We reverse the district court on all other claims and remand for further proceedings not inconsistent with this opinion.

_____